**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 15 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

vs.

MATTHEW JOSEPH
KAMMERSELL,

     Defendant - Appellant.

No. 98-4177

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. No. 97-CR-084-C)

---

Richard McKelvie (Paul M. Warner, United States Attorney and Richard Lambert, Assistant United States Attorney, on the brief), Salt Lake City, Utah, for Plaintiff - Appellee.

Deirdre A. Gorman, Ogden, Utah, for Defendant - Appellant.

---

Before **KELLY**, **HOLLOWAY**, and **BRISCOE**, Circuit Judges.

---

**KELLY**, Circuit Judge.

     Defendant-Appellant Matthew Joseph Kammersell entered a conditional

guilty plea to a charge of transmitting a threatening communication in interstate

commerce, in violation of 18 U.S.C. § 875(c). Upon recommendation of the magistrate judge, the district court rejected Mr. Kammersell's contention that federal jurisdiction did not exist because both he and the recipient of the threat were located in the same state when the transmission occurred. He was sentenced to four months imprisonment, and twenty-four months supervised release. Our jurisdiction arises under 28 U.S.C. § 1291 and we affirm.

Background

The facts in this case are undisputed. On January 16, 1997, Mr. Kammersell, then nineteen years old, logged on to the Internet service provider (ISP) America On Line ("AOL") from his home computer in Riverdale, Utah. Mr. Kammersell's girlfriend was employed at AOL's service center in Ogden, Utah. He sent a bomb threat to her computer terminal via "instant message," hoping that the threat would enable her to leave work early so they could go on a date.

When he sent the bomb threat, it was automatically transmitted through interstate telephone lines from his computer in Utah to the AOL server in Virginia and then back to Utah to his girlfriend's terminal at the Ogden service center. Every message sent via AOL automatically goes from the state of origin to AOL's main server in Virginia before going on to its final destination. This pattern of transmission is the same whether the communication is an electronic mail (e-mail)

message or an instant message.

Mr. Kammersell does not contest that the threat traveled out of Utah to Virginia before returning to Utah. Nor does he contest that his message constituted a sufficient "threat" to trigger § 875(c). His only claim is that the jurisdictional element of § 875(c) cannot be met if based solely on the route of the transmission, where the sender and recipient are both in the same state.

## Discussion

The district court's refusal to dismiss the case on jurisdictional grounds was based upon its interpretation of § 875(c), therefore, its conclusion is reviewed de novo. See United States v. Brown, 164 F.3d 518, 521 (10th Cir. 1998).

Section 875(c), provides:

> Whoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined under this title or imprisoned not more than five years, or both.

This provision was enacted in 1934, and its last significant amendment was in 1939. At that time, the telegraph was still the primary mode of interstate communication.

Mr. Kammersell argues that the statute must be interpreted in light of the sweeping changes in technology over the past 60 years and with reference to Congressional intent. The government urges the court to adhere to the plain

meaning of the statute; because Mr. Kamersell's threat was transmitted from Utah to Virginia to Utah, it was "transmit[ted] in interstate commerce." Because so many local telephone calls and locally-sent Internet messages are routed out of state, under the government's interpretation, federal jurisdiction would exist to cover almost any communication made by telephone or modem, no matter how much it would otherwise appear to be intrastate in nature. Mr. Kammersell argues that such an interpretation will immeasurably broaden federal criminal jursdicition without any discussion by Congress of the matter, and it would be wrong to view sixty years of Congressional inaction on the statute as clear intent.

This may be a compelling argument that Congress should re-examine the statute, but it cannot remove Mr. Kammersell from the reach of the current statute. A federal court must "'give effect to the will of Congress, and where its will has been expressed in reasonably plain terms, that language must ordinarily be regarded as conclusive.'" Negonsott v. Samuels, 507 U.S. 99, 104 (1993) (citation omitted). "[A]s long as the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute." United States v. Ron Pair Enters., 489 U.S. 235, 240-41 (1989). A threat that was unquestionably transmitted over interstate telephone lines falls within the literal scope of the statute and gives rise to federal jurisdiction.

Mr. Kammersell argues that the threat should not be considered as

transmitted interstate because only the recipient could have viewed this "instant message." An "instant message" can only be sent if the recipient is online at the time of transmission, whereas an e-mail may be held in a holding center until it is retrieved. According to Mr. Kammersell, this distinction is crucial because it means that no one outside of the State of Utah could have seen the threat. The distinction, even if correct, is immaterial. No requirement exists under § 875(c) that the threat actually be received or seen by anyone out of state. "The gravamen of the crime is the threat itself," United States v. Cooper, 523 F.2d 8, 10 (6th Cir. 1975).

The "instant message" distinction does enable Kammersell to distinguish the primary case upon which the Government relies, but in the end this does not help him either. Because this is a case of first impression, both sides must rely on analogies. The Government relies upon United States v. Kelner, 534 F.2d 1020 (2d Cir. 1976). There, the defendant was convicted under § 875(c) for threatening to assassinate Yasser Arafat during a television interview that was broadcast over three states. Both the defendant and Arafat were in New York at the time the threat was made. Like Mr. Kammersell, Kelner argued that the "nexus of his activity was predominantly local, and that the statute should not be read literally to reach into spheres of primarily local concern." Kelner, 534 F.2d at 1024. In upholding Kelner's conviction, the court noted:

> However much we might agree as a matter of principle that the congressional reach should not be overextended or that prosecutorial discretion might be exercised more frequently to permit essentially local crimes to be prosecuted locally, we do not feel that Congress is powerless to regulate matters in commerce when the interstate features of the activity represent a relatively small, or in a sense unimportant, portion of the overall criminal scheme. Our problem is not whether the nexus of the activity is "local" or "interstate"; rather, under the standards which we are to apply, so long as the crime involves a necessary interstate element, the statute must be treated as valid.

Id. (citations omitted). While Kelner can be distinguished on the ground that it involved a transmission that was seen by people in more than one state, the Second Circuit's logic remains just as cogent when applied to the current case.

Finally, Mr. Kammersell contends that, based on the spirit of the Supreme Court's decision in United States v. Lopez, 514 U.S. 549 (1995), federal jurisdiction is inappropriate in this case. "Lopez stands for the proposition that Congress may not limitlessly expand the federal criminal jurisdiction based on the commerce clause," and "after Lopez the constitutionality of assertions of federal jurisdiction over what are essentially local crimes must be closely scrutinized." Aplt. Br. at 34. Yet, we cannot overlook plain language in favor of the "spirit" of Lopez, particularly given the difference between the deficient statute in Lopez, 18 U.S.C. § 922(q)(1)(A), and § 875(c). The deficient statute in Lopez did not require an interstate jurisdictional nexus. See Lopez, 514 U.S. at 561 (noting that statute does not contain a requirement that would ensure that the firearm

possession in question would affect interstate commerce).  Because § 875(c)

requires the use of a channel of interstate commerce, it is not subject to the same

limiting interpretation as    <u>Lopez</u> .

AFFIRMED.