**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 5, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

No. 06-3080

WILLIAM SCHAEFER,

Defendant - Appellant.

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 04-CR-20156-JWL)**

Howard A. Pincus, Assistant Federal Public Defender (Raymond P. Moore, Federal Public Defender, with him on the briefs), Denver, Colorado, for Defendant-Appellant.

Kim I. Martin, Assistant United States Attorney (Eric F. Melgren, United States Attorney, with her on the brief), Kansas City, Kansas, for Plaintiff-Appellee.

Before **TYMKOVICH**, **EBEL**, and **HOLMES**, Circuit Judges.

**HOLMES**, Circuit Judge.

In this criminal appeal, Defendant-Appellant William Schaefer challenges the government's evidence as insufficient to support his convictions under 18 U.S.C. §§ 2252(a)(2) and (a)(4)(B), for receipt and possession of images

involving the sexual exploitation of minors. In particular, Mr. Schaefer contends the government failed to offer evidence to show that any single visual image he received or possessed traveled across state lines. Mr. Schaefer seeks a reversal and acquittal on both counts.

Exercising jurisdiction under 28 U.S.C. § 1291, we hold that the government failed to offer sufficient evidence to establish the requisite jurisdictional nexus of a movement across state lines (*i.e.*, a movement in interstate commerce). Specifically, we conclude that the government's evidence concerning Mr. Schaefer's use of the Internet, standing alone, was not sufficient to establish that the child-pornography images at issue moved across state lines. Accordingly, we **REVERSE** Mr. Schaefer's convictions and **REMAND** to the district court for entry of a judgment of acquittal.

## I. BACKGROUND

The government charged Mr. Schaefer in the District of Kansas with one count of receiving child pornography, in violation of 18 U.S.C. § 2252(a)(2), and one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B).[1] These charges stem from a lead the Kansas City Office of

---

[1] The statute reads in relevant part:

(a) Any person who – . . .

(2) knowingly receives, or distributes, any visual depiction that has been mailed, or has been shipped or transported in interstate or

(continued...)

Immigration and Customs Enforcement (ICE) received from the ICE national headquarters. According to the information, Mr. Schaefer used his computer and his credit cards to subscribe to websites containing images of child pornography. These sites provide paying members electronic access to pornographic images.

Following the tip from ICE, authorities executed a search warrant at Mr. Schaefer's home. Agents seized a desktop computer, CD-Rom disks ("CDs"), and various documents. Forensic testing on the computer revealed that Mr. Schaefer purchased at least five subscriptions to child pornography websites. The testing

---

[1](...continued)

> foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by computer, or knowingly reproduces any visual depiction for distribution in interstate or foreign commerce or through the mails, if ----
>
>> (A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and
>>
>> (B) such visual depiction is of such conduct; . . .
>
> (4) either –
>
>> (B) knowingly possesses 1 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, or has been shipped or transported in interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer, if –
>>
>>> (i) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and
>>> (ii) such visual depiction is of such conduct . . . .

also revealed images of child pornography in the computer's "unallocated clusters"[2] and on the temporary "Internet cache files."[3]  The parties stipulated that one CD confiscated contained eight images of child pornography and the second contained three pornographic images.  Authorities interviewed Mr. Schaefer after the search of his home, and he admitted to seeking out images of child pornography on the Internet.

The district court held a bench trial, after Mr. Schaefer waived his right to a jury trial.  Other than Mr. Schaefer's home state of Kansas, the evidence at trial referenced only three states – New Jersey, Florida, and Washington.[4]  However, none of these geographical references concerned the receipt of the images, the CDs possessed, or the actual images found on the CDs and the computer.  In addition, an investigating agent testified that he had no evidence Mr. Schaefer downloaded images via computer and placed them on the CDs found in his home.  No evidence at trial explained where Mr. Schaefer obtained the visual depictions

_____

[2]     "Unallocated clusters" are hidden files on the computer hard drive usually not accessible to a user.  *See* R. vol. I, Doc. 39, District Court Memorandum and Order, at 3 n.1 (Sept. 12, 2006).

[3]     An "Internet cache" is a file that retains information about recently visited websites allowing the site to be loaded faster in the future.  *See* R. vol. I, Doc. 39, *supra*, at 3 n.2.

[4]     A website Mr. Schaefer visited used a third party billing company based in New Jersey and that company used a Florida-based company to coordinate its billing business.  *See* R. vol. II, Exhibit 1.  Microsoft, headquartered in Washington State, issued Mr. Schaefer's email address.  *Id.* at 5.

found on the CDs or who placed the images on the CDs.  Moreover, no evidence indicated where the websites Mr. Schaefer accessed were based, where the websites' servers were located, or where Mr. Schaefer's Internet provider's server was housed.

Focusing primarily on the knowledge component of §§ 2252(a)(2) and (a)(4)(B), however, the district court found Mr. Schaefer guilty on both counts. Specifically, with respect to the two counts, the district court found the evidence established beyond a reasonable doubt that Mr. Schaefer both knowingly "possessed" and "received" images of child pornography.  The court did not fully elaborate in its ruling as to how the government satisfied the jurisdictional prong of §§ 2252(a)(2) and (a)(4)(B) – that the "visual depiction had been mailed, shipped, and transported in interstate or foreign commerce by computer or other means." *See* R. vol. I., Doc. 39, District Court Memorandum and Order, at 5-6, 8-10 (Sept. 12, 2006).  Important to this appeal, the district court based the possession conviction solely on Mr. Schaefer's  possession of the pornographic images on the two CDs, and not on his possession of the images found on the Internet cache files or in the unallocated clusters.[5]

_____

[5]     The district court did not convict Mr. Schaefer for the images found in the Internet cache files or the unallocated clusters on his computer because the government offered no evidence showing Mr. Schaefer knew the computer contained the images, thus no evidence showed he exhibited control over the images.  *See* R. vol. I, Doc 39, *supra*, at 6.  Additionally, the court reasoned that, even if Mr. Schaefer could be said to have "possessed" the images found on the

(continued...)

The district court sentenced Mr. Schaefer to 70 months' imprisonment on count 1, to run concurrently with a 70-month sentence for count 2. The court also issued concurrent terms of three years' supervised release. Mr. Schaefer filed this timely appeal.

## II. DISCUSSION

Mr. Schaefer maintains that we must reverse his conviction for possession and receipt of child pornography because the government produced insufficient evidence on the interstate nexus requirement of §§ 2252(a)(2) (receipt) and (a)(4)(B) (possession). According to Mr. Schaefer, the complete absence of proof at trial that the images he possessed and received traveled across state lines requires an acquittal, as the jurisdictional nexus is an essential element of the statute.

Ordinarily, we construe a challenge to the sufficiency of the evidence as a question of law reviewed de novo. *United States v. Chavis*, 461 F.3d 1201, 1207 (10th Cir. 2006), *cert. denied*, 127 S. Ct. 2062 (2007). We view the evidence in the light most favorable to the government, *United States v. Triana*, 477 F.3d 1189, 1194 (10th Cir. 2007), *cert. denied*, 127 S. Ct. 2928 (2007), "affirming the

---

[5](...continued)
unallocated clusters at one time, he could not be convicted for this, because the government did not establish that his putative possession occurred during the time period charged in the indictment. *Id*.; *see also United States v. Tucker*, 305 F.3d 1193, 1204 (10th Cir. 2002) (explaining the proof necessary to establish knowing possession).

district court unless no [reasonable] jury, when presented with the evidence introduced at trial together with the reasonable inferences therefrom, could find the defendant guilty beyond a reasonable doubt." *United States v. Kimler*, 335 F.3d 1132, 1140 (10th Cir. 2003) (alteration added) (citing *United States v. Campos*, 221 F.3d 1143, 1151 (10th Cir. 2000)). In this case, however, Mr. Schaefer failed to raise an objection, so our review is for plain error. *See United States v. Lawrence*, 405 F.3d 888, 900 n.7 (10th Cir. 2005), *cert. denied*, 546 U.S. 955 (2005). We recently reiterated that a "forfeited claim of insufficient evidence *must be* reviewed under the plain-error standard."[6] *United States v. Goode*, 483 F.3d 676, 681 n.1 (10th Cir. 2007) (emphasis added).

### A. Sufficiency of the Evidence

Mr. Schaefer does not challenge the district court's finding on either count with respect to the "knowing" elements. Our review concerns only whether the evidence at trial sufficiently satisfied the jurisdictional nexus necessary to support a conviction under §§ 2252(a)(2) and (a)(4)(B). Because the sections contain coterminous jurisdictional requirements, we focus initially on the common conduct required to secure a conviction under both the receipt and possession

---

[6] The plain-error test requires the defendant demonstrate: (1) an error; (2) that is plain and obvious under established law; and (3) affects the defendant's substantial rights. *See Goode*, 483 F.3d at 681 (referencing the factors set forth in *United States v. Olano*, 507 U.S. 725, 732 (1993)). If a defendant meets these conditions, a court may correct the error "if it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *See id*. (internal quotation marks omitted).

counts.

## 1. __Jurisdictional Nexus__

Each section's jurisdictional provision requires the government to establish that in committing the offense a visual image "has been mailed, or has been shipped or transported in interstate or foreign commerce . . . by any means including by computer." *See* 18 U.S.C. §§ 2252(a)(2) and (a)(4)(B).

Ultimately, the decision to uphold or overturn Mr. Schaefer's convictions turns on whether an Internet transmission, standing alone, satisfies the interstate commerce requirement of the statute.[7] Mr. Schaefer asserts that § 2252(a)'s jurisdictional provisions requires movement across state lines, and it is not enough to assume that an Internet communication necessarily traveled across state lines in interstate commerce. We agree.

---

[7] We note that the government attempts to support the possession and receipt convictions by relying on precedent addressing Congress's authority to regulate purely intrastate activities, including child pornography. *See, e.g.*, *United States v. Jeronimo-Bautista*, 425 F.3d 1266, 1269 (10th Cir. 2005), *cert. denied*, 547 U.S. 1069 (2006); *see also Gonzales v. Raich*, 545 U.S. 1, 17 (2005) (regulating intrastate production and possession of illegal drug). However, Mr. Schaefer does not challenge Congress's broad Commerce Clause powers or the constitutionality of the statute. Indeed, he accepts that Congress has the broad power to regulate purely intrastate activity, but this concession does not bear on our review of the sufficiency of the evidence for the jurisdictional requirement under §§ 2252(a)(2) and (a)(4)(B). Mr. Schaefer frames his challenge as "decidedly more modest," claiming that the government failed to prove an element of the crime, which in turn "renders his conviction infirm." *See* Aplt. Opening Br. at 22. Thus, *Jeronimo-Bautista* and *Raich* are inapposite as to Mr. Schaefer's conviction.

We hold that the government did not present sufficient evidence to support the jurisdictional nexus of the § 2252(a) provisions at issue. They require a movement between states. The government did not present evidence of such movement; instead, the government only showed that Mr. Schaefer used the Internet. We recognize in many, if not most, situations the use of the Internet will involve the movement of communications or materials between states.[8] But this fact does not suspend the need for evidence of this interstate movement. The government offered insufficient proof of interstate movement in this case.

### a. <u>Statutory Analysis</u>

In reaching this conclusion, "we begin . . . with the language of the statute." *United States v. Wilson*, 182 F.3d 737, 740 (10th Cir. 1999) (internal quotation marks omitted) (quoting *Bailey v. United States*, 516 U.S. 137, 144 (1995)). The plain language of §§ 2252(a)(2) and (a)(4)(B) speaks of movement

---

[8]     We reach this conclusion understanding the likely interstate and international architecture and operation of the world wide web. *See, e.g.*, *Reno v. ACLU*, 521 U.S. 844, 849 (1997) ("The Internet is an international network of interconnected computers."). But we cannot assume this intuitive fact (*i.e.*, a movement via the Internet of child-pornography images between states) on the record before us. Nor has the government asked us to take judicial notice of this fact under Federal Rule of Evidence 201. As to judicial notice, we recently declined to use the doctrine in a case involving computer technology. *See United States v. Andrus*, 483 F.3d 711, 721-722 (10th Cir. 2007). A judicially noticed fact is "one not subject to reasonable dispute in that it is either (1) generally known . . . or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Although judicial notice may be taken *sua sponte*, Fed. R. Evid. 201(c), it would be particularly inappropriate for the court to make broad assumptions about the Internet absent notice to and comment by the parties. *Andrus*, 483 F.3d at 721.

"in commerce," and "giving the words used their ordinary meaning" this signifies a movement between states. *United States v. Hunt*, 456 F.3d 1255, 1264-65 (10th Cir. 2006) (internal quotation marks and citations omitted) (quoting *Moskal v. United States*, 498 U.S. 103, 108 (1990)).

We do not read § 2252(a) as contemplating that the mere connection to the Internet would provide the interstate movement required by the statute. After establishing a computer or Internet connection as the method of transport, the government must still prove that the Internet transmission also moved the images across state lines. For example, by comparison, we cannot find any precedent supporting the notion that showing a defendant "shipped" a proscribed image, without more, satisfies the statutory requirement. The government must couple such evidence with proof the defendant shipped the image across state lines (*i.e.*, in interstate commerce). *See, e.g.*, *United States v. Schatt*, No. 99-6317, 2000 WL 358460, * 2 (10th Cir. 2000) (unpublished) (finding the interstate nexus satisfied when videotapes shipped from Louisiana to Oklahoma).

It is apparent that Congress elected not to reach all conduct it could have regulated under § 2252(a). Congress's use of the "in commerce" language, as opposed to phrasing such as "affecting commerce" or a "facility of interstate commerce," signals its decision to limit federal jurisdiction and require actual movement between states to satisfy the interstate nexus. *Compare Russell v. United States*, 471 U.S. 858, 859 (1985) (noting term "affecting interstate or

foreign commerce" conveys Congress's intent to exert full Commerce Clause power), *with Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 115-16 (2001) (noting "in commerce" language limits Congress's reach).

The language of 18 U.S.C. § 1343 (the wire fraud statute), which uses "in commerce" language very similar to that found in § 2252(a), supports this view. Section 1343's "in commerce" terminology has been repeatedly held to require that communications actually cross state lines to support a conviction. *See United States v. Cardall*, 885 F.2d 656, 675-76 (10th Cir. 1989) (discussing how "fraud-tainted funds" traveled in interstate commerce as required by the wire fraud statute); *accord United States v. Davila*, 592 F.2d 1261, 1263-64 (5th Cir. 1979) (discussing the type of interstate activity required under wire fraud statute); *Center Cadillac, Inc. v. Bank Leumi Trust Co. of N.Y.*, 808 F. Supp. 213, 227 (S.D.N.Y. 1992) (noting the wire fraud statute requires the communication cross state lines), *aff'd*, 99 F.3d 401 (2d Cir. 1995) (unpublished opinion).

We therefore proceed under the view that Congress made a purposeful decision not to exercise its full Commerce Clause power in § 2252(a). *See generally Scarborough v. United States*, 431 U.S. 563, 571 (1977) ("As we have previously observed, Congress is aware of the distinction between legislation limited to activities 'in commerce' and an assertion of its full Commerce Clause power so as to cover all activity substantially affecting interstate commerce.") (certain internal quotation marks omitted) (quoting *United States v. Am. Bldg.*

- 11 -

*Maint. Indus.*, 422 U.S. 271, 280 (1975)).  Under this framework, the plain terms of § 2252(a) convey that Congress intended to punish only those who moved images or "materials" across state lines (*i.e.*, in interstate commerce).  *See, e.g.*, 18 U.S.C. § 2252(a)(2).

In 1988, Congress amended § 2252(a) to add the phrase "including by computer."  We do not construe this amendment as indicating that Congress intended for use of a computer, without more, to satisfy the statute's jurisdictional requirements.  Congress simply wanted to be "doubly sure" we recognized that the statute contemplates more than traditional methods of sending and receiving images.  *Cf. United States v. Alpers*, 338 U.S. 680, 684 (1950) (noting in context of obscenity statute that Congress inserted additional language to make clear the law reached what, at the time, was a growing motion picture industry).  The phrase "including by computer" specifies a method of interstate movement; the government must still establish that any computer-related movement crossed state lines.  Accordingly, on these facts, the government was required to prove that any Internet transmissions containing child pornography that moved to or from Mr. Schaefer's computer crossed state lines.  The government failed to do so.

## b.  Case Law

The government maintains that the evidence at trial met the jurisdictional element, asserting that evidence showing that the visual images "came from the [I]nternet suggests an origin outside [of Kansas]."  Aple. Br. at 9.  However, we

discern no support in our case law for the proposition that under § 2252(a) the government need not prove the movement of the proscribed items across state lines. *See, e.g., Kimler*, 335 F.3d at 1135 (establishing that images traveled from Mr. Kimler's home computer in Kansas to his internet company's server in Missouri and then on to email company's server in California); *Wilson*, 182 F.3d at 744 & n.4 (discussing bulletin board server located in California and Mr. Wilson's computer located in Colorado, so data "traveled in interstate commerce . . . via telephone line"); *United States v. Simpson*, 152 F.3d 1241, 1245 (10th Cir. 1998) (offering evidence that Mr. Simpson downloaded visual images via the Internet from a website in Boston onto his computer in Oklahoma). *Cf. United States v. Kammersell*, 196 F.3d 1137, 1138- 39 (10th Cir. 1999) (finding jurisdictional element of 18 U.S.C. § 875(c) satisfied when AOL instant message traveled from sender in Utah to AOL server in Virginia and back to recipient in Utah).

The case law in our circuit that the government relies upon does not advance its cause. *See United States v. Bass*, 411 F.3d 1198, 1202 (10th Cir. 2005), *cert. denied*, 546 U.S. 1125 (2006); *Kimler*, 335 F.3d at 1139, 1140 n.8. The holdings in *Kimler* and *Bass* are predicated on challenges distinct from the jurisdictional challenge presented here, and neither holding reaches as far as the

government asserts.[9]

In *Kimler*, Mr. Kimler did not contest the government's evidence that every transmission from and to his computer "necessarily" traveled in interstate commerce via telephone lines or that he received images sent via the Internet "across state lines." *Kimler*, 335 F.3d at 1138. Moreover, in *Kimler*, sufficient evidence existed to demonstrate that the proscribed images actually crossed state lines by virtue of the Internet. *Id.* (showing images traveled from "Hotmail" server in California through Missouri to Mr. Kimler's home in Kansas). As for

---

[9] In addition, the government's reliance on our unpublished opinion in *United States v. Wollet*, No. 03-5113, 2006 WL 137404 (10th Cir. Jan. 19, 2006) is misplaced. Mr. Schaefer has attached to his Reply Brief portions of the appellate filings in the *Wollet* case, which we are permitted to notice. *See, e.g.*, *United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007). In *Wollet*, the government introduced evidence tending to establish that any communications that Mr. Wollet received or transmitted via the Internet moved across state lines. In particular, the government presented documentary and testimonial evidence establishing that Mr. Wollet used America Online (AOL) as his Internet provider for a computer that was located in Oklahoma and, significantly, it sponsored testimony of an AOL representative who averred that AOL routes all transmissions through the company's servers in Virginia. *See* Aplt. Reply Br., Attachment 2 at 6, 13 & Attachment 3 at 10-11. And, further, the government's evidence consisting in part of Mr. Wollet's admissions and his son's incriminating testimony confirmed that Mr. Wollet used that AOL Internet connection to download child pornography. *Wollet*, 2006 WL 137404 at *3. It was in this specific factual context – where any Internet transmissions perforce moved across state lines – that we treated evidence of the downloading of images from the Internet as sufficient to establish the interstate-commerce jurisdictional component of § 2252(a). In this regard, we stated: "The jury could rationally have concluded Wollet downloaded the images from the Internet to the diskettes and thus, the images (the graphic files) traveled in interstate commerce." *Id.* In contrast, the government's evidence here did not establish a necessary movement of Mr. Schaefer's Internet communications across state lines. Accordingly, proof of Mr. Schaefer's use of the Internet, standing alone, will not suffice.

*Bass*, our holding did not turn on the evidence concerning the jurisdictional component of the statute, which we review here.  Instead, *Bass* involved the statute's "knowing possession" element.  *See Bass*, 411 F.3d at 1201-02.

In answering the question whether a defendant's use of the Internet, without more, is sufficient proof of § 2252(a)'s jurisdictional nexus, we have not been able to draw upon a wealth of authority from other courts of appeals.  Some circuits, however, have addressed the question or related ones.  We recognize that, at least upon cursory inspection, this limited universe of circuit authority appears to uniformly reflect the view that Internet use is sufficient proof.  *See United States v. MacEwan*, 445 F.3d 237, 244 (3d Cir. 2006), *cert. denied*, 127 S. Ct. 208 (2006) (adopting a mode of analysis, under 18 U.S.C. § 2252A, that directly equates Internet use with interstate commerce); *United States v. Carroll*, 105 F.3d 740, 742 (1st Cir. 1997) (stating that transmission of photographs via the Internet is "tantamount to" moving them through interstate commerce for purposes of 18 U.S.C. § 2251(a)).  *Cf. United States v. Runyan*, 290 F.3d 223, 242 (5th Cir. 2002) (assuming without discussion that use of the Internet may be equated with a movement in interstate commerce and, as to prosecution under related child-pornography statute, 18 U.S.C. § 2252A, holding that "the Government must make a specific connection between the images introduced at trial and the Internet to provide the requisite jurisdictional nexus").

However, the true picture is more complicated.  For example, the First

Circuit's decision in *Carroll* actually offers little support for the proposition that Internet use, standing alone, is sufficient to establish the jurisdictional element of § 2252. *Carroll* is fact-dependent and distinguishable. The government prosecuted Mr. Carroll under another child pornography statute, 18 U.S.C. § 2251(a), which prohibits *inter alia* (a) persuading a minor to engage in sexually-explicit conduct, (b) for the purpose of producing a visual depiction of that conduct, and (c) with the knowledge or reason to know that the depiction will be transported in interstate commerce. *See Carroll*, 105 F.3d at 741-42; 18 U.S.C. § 2251(a). The government introduced evidence pertinent to the jurisdictional requirements of that statute – specifically, evidence that Mr. Carroll had the intent to move the images across state lines. *Id*. at 742. It showed that Mr. Carroll planned to travel to Massachusetts with the pornographic photographs that he had taken in New Hampshire of the minor victim; once in Massachusetts, his objective was to disseminate the photographs via the Internet by means of his computer. Mr. Carroll reportedly planned to use the photographs to start an Internet dating service. *Id*. at 743.

In this factual context, the court observed that "[t]ransmission of photographs by means of the Internet is tantamount to moving photographs across state lines and thus constitutes transportation in interstate commerce." *Carroll*, 105 F.3d at 742. Giving the quoted language its most reasonable interpretation, the court was simply acknowledging that, given Mr. Carroll's willingness to move

- 16 -

the photographs across state lines, his use of an instrumentality that was unquestionably capable of accomplishing this task – the Internet – was "tantamount" to a movement across state lines. Significantly, the *Carroll* court never questioned that there in fact had to be an intention to move the photographs "across state lines" – as opposed to simply an intention to place them on the Internet. Accordingly, *Carroll* does not lend much support to the view that proof of Internet use, alone, is sufficient to establish the jurisdictional element of § 2252(a).

Standing more directly for this proposition, however, is the Third Circuit's decision in *MacEwan*, with which we must respectfully disagree. The *MacEwan* approach runs counter to the plain terms of § 2252(a). There, the court held that, given the interstate character of the Internet, a connection to a website server or request for an image from a server via the Internet invariably involves data moving in interstate commerce. *Id.* Thus, it concluded that in order to establish the jurisdictional element of 18 U.S.C. § 2252A(a)(2)(B) – a child-pornography statute with jurisdictional language identical in material respects to that of § 2252(a) – the government need only prove that the defendant used the Internet in relation to the offense. *Id.* at 244.

The *MacEwan* court, however, overlooked the limiting jurisdictional language that Congress employed, *i.e.*, the "in commerce" language. In effect, it recast the jurisdictional requirement of the child-pornography statute into one that

could be satisfied by use of an "interstate facility," and determined that the Internet was such a facility. *Id.* at 245 (referring to the Internet as "an instrumentality and channel of interstate commerce"). Consequently, it did not insist on proof that the particular child-pornography images crossed state lines, only proof that the defendant "downloaded those images from the Internet." *Id.*

However, the term "interstate facility" (or similar terms) is noticeably absent from § 2252(a), as well as the statute directly at issue in *MacEwan*, § 2252A(a)(2)(B). *Cf.* 18 U.S.C. § 1958(a) (criminalizing the use of "any facility of interstate or foreign commerce" in the commission of a murder-for-hire). As noted, Congress could have used language in § 2252(a) that would have effected a more expansive exercise of its Commerce Clause powers than accomplished by the "in commerce" language; yet, it elected not to do so.

In sum, our review concludes that under the plain terms of § 2252(a), and our precedent, there is no "Internet exception" to the statute's jurisdictional requirements. Simply stated, we decline to assume that Internet use automatically equates with a movement across state lines. With respect to such interstate movement, the government must introduce sufficient evidence to satisfy its burden of proof.

## 2. **Evidentiary Sufficiency: Receipt and Possession Convictions**

Keeping in mind our holding that proof of use of the Internet, standing alone, does not satisfy the jurisdictional requirements of §§ 2252(a)(2) and

(a)(4)(B), we now separately analyze the sufficiency of the government's evidence concerning Mr. Schaefer's receipt and possession convictions. These convictions cannot stand because the government failed to present sufficient evidence concerning the movement of the child-pornography images across state lines.[10]

### a. Receipt Conviction

As to the receipt count, we agree with Mr. Schaefer that the government needed to prove the visual images he received on his computer via the Internet moved across state lines. Because the government provided no relevant evidence to meet this essential element, the conviction cannot stand.

More specifically, unlike *Kimler*, *Wilson*, *Simpson*, or *Kammersell,* the government offered no evidence here on: (1) the server locations of the websites that Mr. Schaefer searched; or (2) the server location of Mr. Schaefer's Internet service provider. Nor did the government travel down any of the myriad other conceivable paths of proof to establish the movement of the pornographic images across state lines. Accordingly, we must conclude that insufficient evidence exists to support Mr. Schaefer's conviction under 18 U.S.C. § 2252(a)(2).

---

[10] The government does not attempt to base an argument in support of Mr. Schaefer's convictions on the movement in interstate commerce of any "materials" used to produce the pornographic images. Nor did it advance this theory of prosecution at trial. Accordingly, we need not directly address the "materials" component of the statute in analyzing the sufficiency of the jurisdictional evidence to support Mr. Schaefer's convictions.

## b. **Possession Conviction**

Similarly, the government's proof is insufficient regarding the possession count. The government points to several facts to support its position: first, the evidence that Mr. Schaefer visited Internet sites that sold child pornography, and downloaded child pornography to his computer; second, the evidence that the CDs found in his possession were technically capable of accepting downloaded materials (*i.e.*, they were "rewritable"); and third, the CDs, among other things, contained foreign-language movie clips of child pornography that were embedded with Internet website addresses, and an image of a young girl, who presumably had her image on the Internet because she was familiar to law enforcement from other child pornography investigations.

The government maintains that this evidence was sufficient to establish the interstate commerce element because it permitted a reasonable fact-finder to determine that the images of child pornography on the CDs were obtained from the Internet. For the reasons discussed above, however, the government's arguments are based upon a faulty legal premise: it was not enough for the government to prove that the child-pornography images on the CDs were obtained from the Internet. The government needed to prove that the images on the CDs moved between states. Even if we analyze the government's arguments under the correct legal framework, the government's proof was virtually non-existent on this point.

In this connection, our *Wilson* decision is instructive. *See Wilson*, 182 F.3d at 744. Mr. Wilson was prosecuted under § 2252(a)(4)(B). A government agent testified at trial that some of the child-pornography images found on computer disks in Mr. Wilson's possession originated from a German magazine. We concluded that this testimony, standing alone, was insufficient to satisfy the statute's jurisdictional nexus. *Id.* We reasoned that the government must prove that the specific images ended up on the disks through a movement in interstate commerce. In this regard, we stated:

> [The government agent] offered no explanation . . . as to how those particular images found their way to the diskettes in defendant's possession. Nor did the prosecution otherwise attempt to outline the possible methods by which defendant could have obtained the files through interstate commerce (e.g., obtaining copies of the German magazines and scanning the images into his computer; downloading copies of the images from *an out-of-state computer via the Internet . . .* etc.).

*Id.* (emphasis added).

Likewise, even if we assume *arguendo* that the images appearing in the foreign-language movie clips and the image of the young girl originated outside of the State of Kansas (like the images from the German magazine in *Wilson*), the government offered no proof that the particular images on the CDs in question moved across state lines. In particular, the government offered no proof that Mr. Schaefer accessed the images through an *interstate* Internet connection and either downloaded them directly to the CDs or downloaded them to his computer and

later transferred them to the CDs.[11]

Accordingly, we must conclude that the government's jurisdictional proof regarding the possession count was insufficient to support Mr. Schaefer's conviction.

## B. Plain Error Standard

We have concluded that the jurisdictional language of §§ 2252(a)(2) and (a)(4)(B) unambiguously requires the movement across state lines of the statutorily-proscribed items. Thus, the district court committed clear and obvious error in finding Mr. Schaefer guilty without evidence of such movement. *See United States v. Ahidley*, 486 F.3d 1184, 1193 (10th Cir. 2007) ("focusing on the unambiguous language of the statute" in holding under plain-error review that "[d]espite the presence of contrary authority in other circuits" the district court's error in discerning the restitution statute's requirements was "error of an obvious nature"). In *Goode*, we affirmed that it will be the extraordinarily rare case where error that is predicated upon the insufficiency of the evidence will not adversely affect a defendant's substantial rights and seriously affect the fairness, integrity, or public reputation of judicial proceedings. *See Goode*, 483 F.3d at 681 n.1 (discussing "the noncontroversial proposition that a conviction in the absence of

---

[11]  Indeed, the government offered no solid proof linking Mr. Schaefer's use of the Internet – whether involving an interstate connection or not – to the pornographic images on the CDs. For example, the government made no effort to show that the specific images stored on Mr. Schaefer's computer also appeared on the CDs.

sufficient evidence of guilt is plainly an error, clearly prejudiced the defendant, and almost always creates manifest injustice"). This is not such a rare case.[12] Consequently, we notice the jurisdictional errors in Mr. Schaefer's two child pornography convictions and conclude that those convictions cannot stand.

### III. CONCLUSION

For the reasons noted above, we conclude that the government presented insufficient proof to establish the jurisdictional basis for Mr. Schaefer's convictions under 18 U.S.C. §§ 2252(a)(2) and (a)(4)(B). In particular, we hold that the government's evidence concerning Mr. Schaefer's use of the Internet, standing alone, was insufficient to satisfy the jurisdictional requirements of these statutes. Under plain-error review, we notice the resulting errors. Accordingly, we **REVERSE** the district court's criminal judgment and **REMAND** to the district court for the entry of an order of acquittal.

---

[12] Among other things, in *Goode*, there actually was evidence in the record to establish jurisdiction with regard to the charged offense. 483 F.3d at 682. In the child-pornography area, our relevant cases (including those relied upon by the government) also reflect that there was record evidence to establish the requisite jurisdictional nexus. *See, e.g.*, *Kimler*, 335 F.3d at 1135; *Wilson*, 182 F.3d at 744 & n.4; *see also*, *supra*, note 9 (discussing *Wollet*). In contrast, the government offered no proof here concerning the path the child-pornography images took before appearing on the two CDs (in particular, no proof that they moved between states).

- 23 -

06-3080, *United States v. Schaefer*

**TYMKOVICH**, J., concurring.


I concur in the opinion but write separately to make two points.  The first is about the Internet.  The development and growth of the Internet over the past fifteen years complicates the statutory analysis in this case.  We all know now that virtually every transmission over the Internet (especially web site access) crosses state boundaries, and quite often international borders.  *See, e.g.*, T. Bonnett, *Is ISP-Bound Traffic Local or Interstate?*, 53 Fed. Comm. L.J. 239, 264-68 (March 2001).  In this case, I have no doubt the images traveled across state and national borders.

Having said that, the statute of conviction, 18 U.S.C. § 2252(a)(2) and (a)(4), requires evidence of such a transmission.  The government asserts that the record contained such evidence, but, as the opinion demonstrates, it did not.  Nor has the government asked us to take judicial notice of the ubiquitous interstate nature of the Internet.  Given the architecture of the Internet, it is vanishingly remote that an image did not cross state lines.  Another case may well be a candidate for judicial notice of this issue.

My second point is about the evidence in this case.  Typically, the evidence of the interstate element is readily presented by the prosecution, or can be gleaned from the record.  Most Internet cases, for example, include testimony regarding the location of the servers accessed by defendant, or some other evidence that

reveals the interstate character of the particular transmissions at issue. *See, e.g., United States v. Wollet*, 164 F. App'x 672 (10th Cir. 2006) (interstate movement of images could be inferred because Oklahoma resident used AOL as his Internet service provider and all AOL servers are located outside the state). This is not such a case. And for that reason, I must reluctantly conclude that the evidentiary failure constitutes plain error under our case law.