UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 08-4423

UNITED STATES OF AMERICA,

            Plaintiff – Appellee,

      v.

KELLY EDWARD WADFORD, JR.,

            Defendant – Appellant.

Appeal from the United States District Court for the District of
South Carolina, at Charleston.  Patrick Michael Duffy, District
Judge.  (2:06-cr-01294-PMD-1)

Argued:  March 26, 2009                 Decided:  June 10, 2009

Before WILKINSON and SHEDD, Circuit Judges, and David A. FABER,
Senior United States District Judge for the Southern District of
West Virginia, sitting by designation.

Affirmed in part, vacated in part, and remanded by unpublished
opinion.  Judge Shedd wrote the opinion, in which Judge
Wilkinson and Senior Judge Faber joined.

**ARGUED:** David Bruce Betts, Columbia, South Carolina, for
Appellant.  Eric John Klumb, OFFICE OF THE UNITED STATES
ATTORNEY, Charleston, South Carolina, for Appellee.  **ON BRIEF:**
W. Walter Wilkins, United States Attorney, Columbia, South
Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

SHEDD, Circuit Judge:

The United States filed an eleven-count superseding indictment against Kelly Wadford Jr., charging him with a number of federal offenses. The indictment included charges that Wadford slipped a date rape drug into a co-worker's drink while they were on an interstate business trip and then took photographs of her partially naked. The indictment further alleged that Wadford unlawfully accessed protected computers and sent false, fraudulent, and threatening e-mails in interstate or foreign commerce to co-workers and attached copies of the photographs. Wadford pled guilty to two of the counts, and a federal jury found him guilty of the remaining nine counts. Wadford now appeals, challenging the sufficiency of the evidence with respect to Counts One through Seven of the indictment. For the following reasons, we affirm in part, vacate in part, and remand for further proceedings.

I

Viewing the evidence in the light most favorable to the government, see Glasser v. United States, 315 U.S. 60, 80 (1942), the evidence at trial establishes the following. Wadford worked in South Carolina as a manager of Pumps America, a company which distributed electric water pumps throughout the United States. Pumps America is a subsidiary of Leader Pumps,

2

an Italian manufacturer of electric water pumps. Pumps America employees used the company's computers in South Carolina to communicate with employees located in Italy, and employees in Italy used the company's computers to access electronic information stored in South Carolina.

In January 2005, Wadford hired a woman (hereinafter, the "co-worker") as a sales representative for Pumps America. In March 2005, Wadford purchased approximately 250 tablets of Rohypnol from a pharmacy in Brazil. Rohypnol, which is illegal in the United States, is a brand name for the drug flunitrazepam. It is known as a "date rape drug" because it has been secretly given to individuals to facilitate sexual assaults.[1]

On April 11, 2005, Wadford and the co-worker left South Carolina by car on a multi-day interstate sales trip. Wadford selected the customers they would visit ahead of time, and he brought one or more Rohypnol tablets with him. The next day, after meeting with a customer in Ohio, Wadford and the co-worker stopped for gas, and he offered to get her a drink. Wadford went into a store and returned with a fountain soda for her.

---

[1] Flunitrazepam is a strong central nervous system depressant which causes extreme sleepiness and amnesia. It is water-soluble, tasteless, and odorless.

Wadford put flunitrazepam in her drink without her knowledge. She consumed the drink and shortly thereafter became nauseated.

When they arrived at a hotel later that day, Wadford checked them into separate rooms and then helped the co-worker into her room. The next thing she remembered is waking up the next morning. Unbeknownst to her, Wadford had entered her hotel room during the night and had taken photographs of her naked from the waist down.

Over a year later, in May 2006, someone sent an anonymous e-mail to Pumps America's parent company in Italy, complaining that Wadford was sexually harassing employees. The company initiated an internal investigation and began interviewing employees about the allegations. The co-worker and her fellow employees, Mary Brown and Vicki Hilderbrand, were among those interviewed. Wadford was fired sometime in June 2006.

During May and June 2006, Wadford accessed the work e-mail accounts of Hilderbrand and Brown and sent a series of unauthorized e-mails under their names in an effort to disguise his identity. In the e-mails, Wadford sent copies of the photographs and threatened Pumps America employees in an effort to get them to retract allegations about him so he could retain or get his job back. Three of the e-mails are particularly relevant to this appeal.

On May 20, Wadford sent an e-mail from Hilderbrand's work e-mail account to Brown's work e-mail account, and it contained the following text: "Mary, If you care about the long term future of your grandkids you should tell the truth and resign from the company." J.A. 661-62. It was signed "Vicki." Id. The government introduced the expanded header information for this e-mail into evidence.[2] The expanded header included data about the route the e-mail took from sender to recipient. When coupled with other evidence presented at trial, including the expert testimony of an FBI computer forensic examiner, the header information shows that the e-mail was sent from Wadford's home in South Carolina and travelled through a Leader Pumps server located in Italy before it was received by Brown back in South Carolina. This e-mail serves as the basis for Count Five of the indictment.

On June 20, Wadford sent an e-mail from Hilderbrand's work e-mail account to her personal e-mail account, which ended in "@aol.com." This e-mail contained the following text: "If you wish to ensure the long term welfare of evryone [sic] close to

_____

[2] E-mails usually display partial header information which reveals the basic to/from information, the date, and the subject line of the e-mail. However, users can access an e-mail's extended header information which contains additional information, such as the Internet Protocol addresses associated with the sender and recipient and information about the servers that processed the e-mail.

you, you should consider telling the truth and resign from your position," J.A. 664, and it serves as the basis for Count Six. Like the e-mail underlying Count Five, the government introduced the expanded header information for this e-mail. The evidence indicates that Wadford sent this e-mail from his home in South Carolina and that Hilderbrand received it in South Carolina. Unlike the Count Five e-mail, however, this one did not pass through the company's server in Italy because Wadford sent it to Hilderbrand's personal e-mail account. Instead, the e-mail passed through servers owned or operated by various companies, including America Online ("AOL").[3] While the expanded header information appears to contain data about the AOL servers through which the e-mail passed, the government did not introduce any evidence regarding the location of those servers or the specific route this e-mail travelled. The government's computer forensic examiner testified that the Internet is basically a group of computers and servers acting together, but the government did not ask, and the expert did not offer, any opinion on whether an e-mail sent from South Carolina to an

---

[3] AOL provides a number of online communications tools, such as e-mail, news groups, and chat rooms, that allow its subscribers to communicate with one another and with other users over the Internet.

6

"@aol.com" address which was received in South Carolina could or would travel outside the state.

Also on June 20, Wadford sent an e-mail from Brown's work e-mail account to Hilderbrand's work e-mail account and from there forwarded the e-mail to the co-worker's work e-mail account. Wadford attached three photographs he took of the co-worker during their April 2005 sales trip showing her naked from the waist down. The e-mail contained the following text: "there are 137 more like these but better. To prevent widespread distribution, you need to contact the one you have wronged." J.A. 659-60. It was signed "Vicki." Id. The expanded header information and other evidence in the record establishes that Wadford sent this e-mail from his home in South Carolina and it travelled through a company server in Italy before being received by the co-worker back in South Carolina. This e-mail serves as the basis for Count Seven.

As noted, the government filed an eleven-count superseding indictment against Wadford.[4] After he pled guilty to two firearm

_____

[4] After the grand jury returned an eight-count indictment against Wadford, he was released on bond pending trial. Approximately two weeks later, a police officer on patrol spotted Wadford on the same street where the co-worker lived. Wadford was wearing a black mask, a hooded sweatshirt, and gloves. He was also carrying a backpack. When the officer stopped Wadford and examined the contents of his backpack, the officer found a handgun with the safety off and a bullet in the chamber. The officer also found Rohypnol tablets in Wadford's (Continued)

7

possession counts, a federal jury found him guilty of the remaining nine counts. At the close of the government's case, Wadford moved for a judgment of acquittal under Fed.R.Crim.P. 29 based on insufficiency of the evidence, and he renewed the motion at the close of all evidence and after the jury returned its verdict. The district court denied Wadford's motions and sentenced him to a total term of 180 months imprisonment. This appeal followed.

## II

Wadford argues that the district court erred by denying his Rule 29 motion. In particular, he argues that we should vacate his convictions on Counts One through Seven because certain elements of the offenses charged in those counts are not supported by substantial evidence.

We review the district court's decision to deny a Rule 29 motion for judgment of acquittal de novo. United States v. Gallimore, 247 F.3d 134, 136 (4th Cir. 2001). Where, as here,

---

car, which was parked nearby. The government then filed the superseding indictment, which included three additional charges based on Wadford's post-indictment conduct: possession of a firearm by a felon in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), 924(e), and 3147(1); attempted witness tampering in violation of 18 U.S.C. §§ 1512(a)(2)(A) and 3147(1); and carrying a firearm during and in relation to his attempt to tamper with a witness in violation of 18 U.S.C. § 924(c)(1).

8

the motion was based on a claim of insufficient evidence, "[t]he verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." Glasser, 315 U.S. at 80. Substantial evidence is evidence which "a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc). In evaluating the sufficiency of the evidence, we do not review the credibility of the witnesses, and we assume that the jury resolved all contradictions in the testimony in favor of the government. United States v. Sun, 278 F.3d 302, 313 (4th Cir. 2002). In addition, we consider circumstantial and direct evidence, and allow the government the benefit of all reasonable inferences. United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982).

A.

In Count One, the government charged Wadford with attempted computer fraud in violation of 18 U.S.C. §§ 1030(a)(4) and 1030(b). As an element of the offense, the government must show that Wadford accessed or attempted to access a "protected computer," 18 U.S.C. § 1030(a)(4), which includes a computer "used in or affecting interstate or foreign commerce or communication," id. § 1030(e)(2)(B).

9

Wadford argues that his conviction on Count One should be vacated because there is no evidence that the computers in question were "protected computers." We disagree. The evidence adduced at trial indicates that the company's computers were used by employees in South Carolina to communicate with employees in Italy and that employees in Italy used the computers to access electronic data stored in South Carolina. Viewing this evidence in the light most favorable to the government, we conclude that substantial evidence supports the jury's verdict because the computers were used in foreign communication. See, e.g., Cable & Wireless P.L.C. v. FCC, 166 F.3d 1224, 1231 (D.C. Cir. 1999) (recognizing that Congress has defined the phrase "foreign communication" as a "'communication or transmission from or to any place in the United States to or from a foreign country'").[5]

B.

In Count Three, the government charged Wadford with attempted possession of flunitrazepam with intent to distribute it in violation of 21 U.S.C §§ 841(a)(1), 841(b)(1)(D), and 846.

---

[5] Wadford also argues that the jury's verdict on Count Two, which alleged aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1) could not be sustained because it was dependent upon a valid finding of guilt on Count One. Because we reject Wadford's argument regarding Count One, we find that his argument regarding Count Two is also without merit.

Wadford argues that his conviction under Count Three should be vacated because there is no evidence that he intended to distribute the flunitrazepam. However, viewing the evidence in the light most favorable to the government, including the evidence that Wadford purchased approximately 250 tablets containing flunitrazepam before his April 2005 trip with the co-worker, brought one or more of the tablets with him on the trip, and then placed the drug in her drink, we conclude that substantial evidence supports this element of the charged offense.

C.

In Count Four, the government charged Wadford with violating the Mann Act, 18 U.S.C. § 2422(a), which generally prohibits a person from coercing or inducing another to travel in interstate commerce to engage in unlawful sexual activity. Wadford argues that the evidence is insufficient to support a finding that he induced the co-worker to travel in interstate commerce to engage in unlawful sexual activity. Specifically, he argues that the evidence shows that they left South Carolina on a legitimate business trip and, at most, he drugged and photographed the co-worker entirely within Ohio. We disagree.

To establish a violation of the Mann Act, the government does not need to establish that an unlawful purpose was the sole factor motivating Wadford's interstate travel. Some courts have

11

sustained Mann Act convictions where the unlawful purpose was simply one of the purposes motivating the interstate travel while other courts have required the unlawful purpose to be the dominant purpose. See, e.g., United States v. Vang, 128 F.3d 1065, 1071 (7th Cir. 1997). The evidence in this case tends to prove that Wadford purchased the flunitrazepam approximately two months after he hired the co-worker and one month before he went on the April 2005 interstate trip with her. The evidence also indicates that Wadford decided where they would travel on their trip, took one or more tablets containing flunitrazepam with him on the trip, slipped the drug into her drink, and then took photographs of her naked while she was under the influence of the drug. Viewed in the light most favorable to the government, we conclude that substantial evidence supports a finding that an unlawful purpose was not only one of the purposes motivating Wadford's interstate travel but a dominant purpose.

D.

In Counts Five, Six, and Seven, the government charged Wadford with sending three threatening e-mails in violation of 18 U.S.C. §§ 875(b) and (d). Wadford argues that substantial evidence does not support a finding that the e-mails underlying these counts were transmitted in either interstate or foreign commerce as required by §§ 875(b) and (d). As set forth below,

12

we find that substantial evidence supports the jury's verdict with respect to Counts Five and Seven, but not Count Six.

A conviction under either §§ 875(b) or (d) requires the government to prove that the threatening communication was transmitted "in interstate or foreign commerce." 18 U.S.C. § 875(b) (emphasis added); id. § 875(d). The emphasized language is important because "Congress uses different modifiers to the word 'commerce' in the design and enactment of its statutes." Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 115 (2001). For example, "[t]he phrase 'affecting commerce' indicates Congress' intent to regulate to the outer limits of its authority under the Commerce Clause." Id. In contrast, the words in commerce are "understood to have a more limited reach." Id. Courts have repeatedly held that the in commerce formulation requires that the communication actually cross a state or national border. See, e.g., United States v. Lewis, 554 F.3d 208, 212-14 (1st Cir. 2009); United States v. Schaefer, 501 F.3d 1197, 1200-02 (10th Cir. 2007); Smith v. Ayres, 845 F.2d 1360, 1366 (5th Cir. 1988). Consistent with these cases, we find that §§ 875(b) and (d) require as an element of the offenses that the communication cross a state or national border. This element can be established by either direct or circumstantial evidence.

13

With respect to the e-mail Wadford sent to Brown's work e-mail address and the e-mail he sent to Hilderbrand's and the co-worker's work e-mail addresses – i.e., those underlying Counts Five and Seven – we find that substantial evidence supports a finding that they were transmitted in interstate or foreign commerce. As noted above, the evidence indicates that these e-mails were sent from South Carolina and travelled through servers located in Italy before they were received by these employees back in South Carolina.

We reach a different conclusion with respect to the e-mail underlying Count Six – the e-mail Wadford sent to Hilderbrand's personal "@aol.com" e-mail address – because substantial evidence does not support a finding that this e-mail was transmitted in interstate or foreign commerce. The government concedes that there is no direct evidence on this point, and we discern no circumstantial evidence in this record which would allow a reasonable juror to infer that the e-mail crossed a state or national border.[6] Therefore, we agree with Wadford that his conviction on Count Six must be vacated.[7]

_____

[6] We recognize that other courts have found that e-mails sent to an "@aol.com" address always pass through AOL servers located in Virginia before arriving at their final destination. See, e.g., Jaynes v. Commonwealth, 666 S.E.2d 303, 307 (Va. 2008). However, the government acknowledges that the record in this case is silent on the location of AOL's servers. Moreover, the government asserted at oral argument that it would not be
(Continued)

14

III

For the foregoing reasons, we affirm the district court in part, vacate in part, and remand for further proceedings consistent with this opinion.

<u>AFFIRMED IN PART,</u>
<u>VACATED IN PART,</u>
<u>AND REMANDED</u>

---

appropriate to take judicial notice that AOL's servers are located in Virginia.

[7] It appears that vacating Wadford's conviction on Count Six will not alter his length of imprisonment. The district court sentenced Wadford to a 70-month prison term on Count Six, but this term was to run concurrently with at least one other 70-month prison term.