**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 14, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

CASEY BALLIEU,

      Defendant-Appellant.

No. 08-8097
(D.Ct. No. 2:08-CR-00015-ABJ-1)
(D. Wyo.)

_____

**ORDER AND JUDGMENT**[*]

Before **BARRETT**, **ANDERSON**, and **BRORBY**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Defendant Casey Ballieu appeals his conviction on grounds the district court erred in denying both his request for a substance abuser jury instruction

_____

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

directed at the testimony of two of the government's witnesses and his motion for acquittal on grounds the government failed to prove he transmitted a digital photographic image of child pornography in interstate commerce. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm Mr. Ballieu's conviction.

## I. Factual Background

Mr. Ballieu pled not guilty to an indictment charging him with distribution of child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A) and (b)(1). During his trial, which began on September 8, 2008, the government presented witness testimony in support of its case against Mr. Ballieu, including the testimony of Mr. Ballieu's estranged wife, Viola Ballieu. Mrs. Ballieu testified that on November 30, 2007, while at her home in Newcastle, Wyoming, she was communicating by text messages with her husband, who was working in Rifle, Colorado. During their communications, she received a text message from him containing a pornographic photograph of a baby girl.[1] On receipt of the pornographic image, Mrs. Ballieu immediately contacted law enforcement, showed an officer the image, and later gave her cellular telephone containing the image to the Newcastle Police Department. At trial, Mrs. Ballieu identified the pornographic image she received from her husband on November 30, 2007, which

---

[1] The issue of whether the digital photographic image is pornographic is not in dispute nor is it dispositive of this appeal, and therefore we decline to describe the image transmitted.

was admitted as Government Exhibit 1-I without objection. During direct examination, Mrs. Ballieu also admitted she used crystal methamphetamine with her husband for two months during 2006, but stated she had not used drugs since 2006 and was not using drugs at the time of trial.

Another government witness, Chrystal Eld, of Rathdrum, Idaho, testified that in November 2007 she met a man with the username "Metalrod" through a chat room called "Lifestylers." After exchanging over one hundred messages with "Metalrod" through Lifestylers, the two exchanged phone numbers and continued to communicate through text messaging when "Metalrod" asked her to take a photograph of her thirteen-month-old daughter in a pornographic manner and send it to him, and she complied with his request.

During the trial, Ms. Eld identified the photographic image she took of her daughter and sent to "Metalrod" on November 2, 2007, as Government Exhibit 1-I, which was the same pornographic image Mrs. Ballieu previously identified as receiving from her husband on November 30, 2007. During her direct testimony, Ms. Eld also admitted to being depressed and using marijuana one year earlier, in November 2007, and explained she received a grant of immunity from the government under which she was testifying and that her parental rights to her daughter were being terminated. Mr. Ballieu's counsel did not cross-examine

either Ms. Eld or Mrs. Ballieu on their drug use. Following Ms. Eld's testimony, the district court verbally cautioned the jury that her immunized testimony should be examined and weighed with greater care than someone's testimony without such an agreement with the government.

Special Agent Randall Huff with the Wyoming Internet Crimes Against Children Task Force also testified at trial, stating that on December 3, 2007, he received a telephone call from the Newcastle Police Department regarding the pornographic image admitted as Government Exhibit 1-I. During his investigation into the transmission of the pornographic image, he was able to determine "Metalrod" was Mr. Ballieu and verified Mr. Ballieu and Ms. Eld exchanged multiple text messages with photographic images, including the child pornography image at issue, which he determined was sent on November 2, 2007. He explained he made this identification and verified the transmission of the text messages and photographic images based on a forensics examination of Mr. Ballieu's cellular telephone and Mr. Ballieu's and Ms. Eld's AT&T telephone records, including the series of single-frame JPEG-type images Ms. Eld sent to Mr. Ballieu on November 2, 2007. A portion of the AT&T records on which he relied, showing numerous transmissions between their cellular telephones on November 2, 2007, was admitted into evidence.

Special Agent Huff also testified that on December 5, 2007, he and another special agent, Cory Dunne, traveled to Mr. Ballieu's home in Rifle, Colorado, to interview him. After informing him of his *Miranda* rights, Mr. Ballieu verbally waived those rights. The interview of Mr. Ballieu was audibly recorded, lasted just over an hour, and was redacted into a fifty-three-minute version admitted into evidence as Government Exhibit 4. During the redacted fifty-three-minute interview, Mr. Ballieu stated he did not know who sent him the pornographic image and that he did not intentionally send it to his wife. In addition, he stated he was at work in Rifle, Colorado, sitting in his chair in his shop during lunch, when he mistakenly sent the image to his wife. He also stated he thought his wife was at her home in Newcastle, Wyoming, when she received it.

## II. Procedural Background

During the trial, the district court conducted a "voluntariness hearing," without the presence of the jury, for the purpose of establishing whether Mr. Ballieu received and waived his *Miranda* rights prior to his interview and to determine what portions of his interview were audibly recorded. During his testimony at the hearing, Special Agent Dunne testified as to which portions of Mr. Ballieu's audio interview recording had been redacted to remove discussion of his prior criminal conviction and other unintelligible portions, which resulted in both the fifty-three-minute version and a shorter six- or seven-minute version.

Counsel for both parties advised the district court of their stipulation to play the shorter version to the jury in the courtroom, in the interest of time, but to send the fifty-three-minute version, previously admitted into evidence as Government Exhibit 4, with the jury for its deliberations. At no time did the defense object to admission of Government Exhibit 4 into evidence or to its submission to the jury for deliberation without playing it in an open court. The district court then informed the jury of the parties' stipulation; ultimately, the shorter version was played in open court, while the longer fifty-three-minute version was sent with the jury for its deliberations. Because the shorter version was not admitted as evidence, it is not contained in the record on appeal, and neither party has represented what portion of the interview it contained.

At the conclusion of the government's evidence, Mr. Ballieu offer no evidence in support of his defense, but moved for acquittal, arguing the government failed to prove he sent the pornographic image through interstate commerce. In making this argument, Mr. Ballieu asserted no testimony established he was in a different state or that the pornographic image went through interstate commerce. The district court took the issue under advisement, but only after noting Mrs. Ballieu testified Mr. Ballieu lived in Colorado and Mr. Ballieu admitted in his interview he was in his shop at work when the image was sent; the district court stated it believed this constituted sufficient evidence of an

interstate commerce nexus for the jury to consider. On the following morning, the district court denied the motion to acquit, explaining Government Exhibit 4, consisting of the fifty-three-minute interview to be provided to the jury for deliberation, contained several statements by Mr. Ballieu indicating he sent the image to Mrs. Ballieu from Colorado on the date in question.

At a subsequent jury instruction conference, Mr. Ballieu's counsel requested the use of proposed Jury Instruction No. 4, which stated:

> The testimony of a drug or alcohol abuser must be examined and weighed by the jury with greater care than the testimony of a witness who does not abuse drugs or alcohol.
>
> Xxx and xxx may be considered to be abusers of drugs or alcohol.
>
> The jury must determine whether the testimony of a drug or alcohol abuser has been affected by drug or alcohol use or the need for drugs or alcohol.

R., Vol. 1 at 67. The district court denied Mr. Ballieu's request, explaining it was rejecting the instruction because there was "no evidence of any recent use of drugs by either of the witnesses, neither the mother of the child who was the subject of the photograph nor of the ... estranged wife of [Mr. Ballieu]." R., Vol. 3 at 272.

While the district court rejected Mr. Ballieu's proposed Jury Instruction

No. 4, other instructions dealing with the credibility of the witnesses were provided to the jury, including, in part, the following: "Instruction No. 3. It will be up to you to decide which witnesses to believe, which witnesses not to believe and how much, if any, of any witness's testimony to accept or reject." R., Vol. 1 at 91.

Instruction No. 30

> You, as jurors, are the sole judges of the credibility of the witnesses and the weight their testimony deserves. ...
>
> You should carefully scrutinize all of the testimony given, the circumstances under which each witness has testified, and every matter in evidence which tends to show whether a witness is worthy of belief. Consider each witness's intelligence, motive and state of mind, and demeanor and manner while on the stand. Consider the witness's ability to observe the facts to which he or she has testified, and whether he or she impresses you as having an accurate recollection of these matters. Consider also any relation each witness may bear to either side of the case; the manner in which each witness might be affected by the verdict; and the extent to which, if at all, each witness is either supported or contradicted by other evidence in the case.

*Id.* at 119.

Instruction No. 31

> The testimony of an immunized witness, someone who has been told that her testimony will not be used against her in return for that cooperation, must be examined and weighed by the jury with greater care than the testimony of someone who is appearing in court without the need for such an agreement with the government.
>
> Chrystal Eld is an immunized witness in this case.

The jury must determine whether her testimony has been affected by self-interest, or by the agreement she has with the government, or by her own interest in the outcome of this case, or by prejudice against the defendant.

*Id.* at 121.

In addition, jury instructions regarding the elements of the crime charged were provided to the jury, which stated, in part, the government had "the burden of establishing each of [the] elements by proof beyond a reasonable doubt" and that:

In order to sustain its burden of proof for the crime of distributing child pornography as charged in the [i]ndictment the [g]overnment must prove the following essential elements beyond a reasonable doubt:

1. On or about November 30, 2007;

2. The [d]efendant, Casey Ballieu;

3. Did knowingly distribute child pornography, namely a digital image...[;]

4. *Said digital image file having been mailed, shipped, or transported in interstate commerce, from the State of Colorado to the State of Wyoming by means of a cellular telephone.*

If the [g]overnment fails to prove any of these elements by proof beyond a reasonable doubt, you should find the [d]efendant not guilty.

If, on the other hand, the Government proves each of the elements by proof beyond a reasonable doubt, you should find the [d]efendant guilty.

*Id.* at 104-05 (emphasis added). Other instructions directed the jury to consider and evaluate all the evidence received into the record, including the exhibits.

Following deliberation, the jury found Mr. Ballieu guilty of knowingly distributing child pornography through interstate commerce. The district court then sentenced Mr. Ballieu to the minimum statutory term of fifteen years imprisonment, pursuant to 18 U.S.C. § 2252A(a)(2)(A) and (b)(1). Mr. Ballieu does not contest his sentence on appeal.

### III. Discussion

### A. Jury Instruction

On appeal, Mr. Ballieu asserts the district court erred in refusing to give his proposed jury instruction advising the jury to examine and weigh the testimony of a drug or alcohol abuser with greater care. In making this assertion, he points out Ms. Eld testified she was a marijuana user and depressed in November 2007 and that Ms. Ballieu testified she used crystal methamphetamine in 2006 for approximately two months. He claims their testimony prejudiced him because the jurors should have been advised the testimony of drug abusers should be examined and weighed with greater care than other witnesses who are not substance abusers. In response, the government argues the district court correctly refused the instruction because no evidence indicated either witness had a drug

-10-

addiction or even used drugs at the time of trial, but only that they had previously used drugs. But, even if they had been drug users at the time of trial, the government argues the district court did not abuse its discretion because it gave general credibility instructions regarding all the witnesses as well as a specific immunized witness instruction directed at Chrystal Eld.

"We review de novo whether, as a whole, the [trial] court's jury instructions correctly stated the governing law and provided the jury with an ample understanding of the issues and applicable standards." *Martinez v. Caterpillar, Inc.*, 572 F.3d 1129, 1132 (10th Cir. 2009); *see also Zokari v. Gates*, 561 F.3d 1076, 1090 (10th Cir. 2009). However, we review the district court's decision whether to give a particular instruction for an abuse of discretion, and "reverse only in those cases where we have a substantial doubt whether the jury was fairly guided in its deliberations." *Martinez*, 572 F.3d at 1132 (quotation marks and citation omitted). "As long as the charge [to the jury] as a whole adequately states the law, the refusal to give a particular instruction is not an abuse of discretion." *Zokari*, 561 F.3d at 1090 (quotation marks and citation omitted).

Having determined our standard of review, we turn to the legal principles involved with providing a jury with drug abuser or addict instructions. We have

held that "[a]s a general rule, prudence dictates the giving of an addict instruction whenever the prosecution has relied upon the testimony of a narcotics addict." *United States v. Smith*, 692 F.2d 658, 661 (10th Cir. 1982). But, even in cases where the witness is an addict, we have held the decision regarding whether to give the drug abuser instruction depends "on the particular facts of each case." *United States v. Cook*, 949 F.2d 289, 294 (10th Cir. 1991); *Smith*, 692 F.2d at 661. Some of the circumstances we consider include whether (1) the drug abuse of the witness was revealed to the jury; (2) other evidence corroborated the drug abuser's testimony; and (3) the jury instructions included a general credibility instruction as well as instructions requiring special care in weighing and evaluating certain testimony, such as that of an accomplice, felon, or one who is testifying under a grant of immunity. *See Cook*, 949 F.2d at 294-95; *Smith*, 692 F.2d at 660-61.

We applied these principles in a similar case to the one presented here in *United States v. Davis*, 286 F. App'x 574, 580-81 (10th Cir. July 31, 2008) (unpublished op.). While, generally, unpublished opinions are not considered "valuable precedent," *Davis* nevertheless has persuasive value with respect to the same material issue raised here and assists with our disposition of this appeal.[2]

[2] In this circuit, unpublished orders historically were not considered binding precedent, except under the doctrines of law of the case, res judicata, and

(continued...)

*See* 10th Cir. R. 32.1 and 36.1.  In *Davis*, the defendant requested a drug abuser jury instruction almost identical to the one requested here.  286 F. App'x at 580-81.  We determined the district court did not abuse its discretion in refusing to give the instruction because the evidence presented did not indicate the cooperating witness at issue was abusing drugs at the time of the events of the case or at the time he testified at trial, but only that he had used drugs two years prior to the trial.  *Id.* at 581.  We held that "[w]hile the drug abuser instruction should generally be given when a known drug abuser testifies, ... evidence of drug abuse at some point in the witness's past does not necessarily establish that the witness should still [be] considered to be an abuser of drugs such that the instruction should be given."  *Id.*  Other factors on which we also relied in determining no abuse of discretion occurred included the fact the district court provided general witness credibility instructions, it instructed the jury to evaluate the cooperating witness's testimony with greater care, and defendant's counsel did not press the point of any drug abuse issue in its witness examination.  *See id.*

---

²(...continued)
collateral estoppel, and therefore, citation to unpublished opinions was not favored.  *See* 151 F.R.D. 470 (10th Cir. 1993) (containing General Order of November 29, 1993).  However, under this court's current rules, and even our historic treatment of such unpublished orders, an unpublished opinion or order may be relied on for the purpose of disposing of the issue presented if it has persuasive value with respect to a material issue in a case and would assist the court in its disposition.  *See id.*; 10th Cir. R. 32.1 and 36.1 (2009).

In this case, no evidence in the record demonstrates Mrs. Ballieu or Ms. Eld regularly abused drugs or were otherwise addicts. Instead, Mrs. Ballieu admitted she used crystal methamphetamine with her husband for two months during 2006, but stated she had not used drugs since 2006 and was not using drugs at the time of trial in September 2008. Similarly, Ms. Eld also admitted to using marijuana one year earlier, during the month of November 2007, and explained the government was providing her a grant of immunity under which she was testifying, but no further testimony was elicited establishing she abused drugs or was using drugs at the time of the 2008 trial. As we stated in *Davis*, evidence of drug abuse at some point in the witness's past does not necessarily establish the witness is an abuser of drugs for the purpose of providing the jury a drug abuser instruction. *See id*. For this reason alone, the district court did not abuse its discretion in refusing to provide the drug abuser instruction at issue here.

In addition, the jury in this case was aware of Ms. Eld's and Mrs. Ballieu's prior drug use, including the fact Ms. Eld was using marijuana during the month that she sent the photographic image at issue. As in *Davis*, the district court provided general witness credibility instructions as well as an instruction to consider Ms. Eld's immunized testimony with greater care. *See id*. The general credibility instructions included, in part, directions for the jury to carefully scrutinize the circumstances under which each witness testified, each witness's

-14-

motive and state of mind, and each witness's ability to observe the facts to which she testified and her recollection of the matter. These instructions, together with the immunized testimony instruction and the jury's knowledge of their prior drug use, was sufficient to alert the jury as to the degree of care they should give Ms. Eld's and Mrs. Ballieu's testimony. Finally, these two witnesses provided corroborating evidence regarding the photographic image and its connection to Mr. Ballieu, which was further corroborated by the forensics investigation conducted by Special Agent Huff. For these reasons, we conclude the district court did not abuse its discretion in refusing to give the drug abuser instruction to the jury, and its refusal to give it did not prejudice Mr. Ballieu.

## B. Interstate Commerce Element

Mr. Ballieu continues to argue, as he did in his motion for acquittal, that the government failed to meet its burden of establishing the pornographic image at issue was transported in interstate commerce and, on appeal, relies on our decision in *United States v. Schaefer*, 501 F.3d 1197 (10th Cir. 2007), to support his argument the district court erred in failing to grant his motion for acquittal. In arguing that the district court erred in its ruling, he argues (1) no testimonial evidence exists establishing he was in Colorado when he allegedly sent the image to his estranged wife; (2) the fifty-three-minute audio interview recording was not played to the jury during the course of the trial and therefore no one knows

whether the jury listened to it during its deliberations; and (3) the government failed to offer evidence regarding the location of the cell tower nearest to Rifle, Colorado.

"We review the sufficiency of the evidence to support a jury's verdict and the denial of [a] motion for judgment of acquittal de novo." *United States v. Vigil*, 523 F.3d 1258, 1262 (10th Cir.), *cert. denied*, 129 S. Ct. 281 (2008). "We ask whether a reasonable jury could find a defendant guilty beyond a reasonable doubt, viewing the evidence in the light most favorable to the government and drawing reasonable inferences therefrom." *Id.* In conducting this inquiry, we do not "weigh conflicting evidence nor consider the credibility of witnesses," but "simply determine whether the evidence, if believed, would establish each element of the crime." *United States v. Delgado-Uribe*, 363 F.3d 1077, 1081 (10th Cir. 2004) (quotation marks and citation omitted).

Applying these principles, it is apparent the evidence offered at trial reasonably supported the jury's finding of guilt beyond a reasonable doubt with respect to the interstate commerce element. As the district court pointed out, Government Exhibit 4, consisting of the fifty-three-minute interview provided to the jury for deliberations, contained several admissions by Mr. Ballieu that he sent the image to Mrs. Ballieu from Colorado on the date in question and thought

she was in Wyoming when she received it. In addition, Mrs. Ballieu testified she was in Wyoming and her husband was in Colorado when she received the image from him. It is evident a reasonable jury could find Mr. Ballieu guilty beyond a reasonable doubt on the issue of an interstate nexus when viewing this evidence in the light most favorable to the government and drawing reasonable inferences therefrom.

While Mr. Ballieu relies on our decision in *Schaefer* to support his claim that the district court erred in denying his motion for acquittal because the government failed to carry its burden of proving an interstate nexus, we find *Schaefer* distinguishable from the case presented here. In *Schaefer*, the government relied solely on the defendant's use of the internet to prove the disputed pornographic image traveled through interstate commerce, which we held was insufficient to satisfy the interstate nexus requirement. *See* 501 F.3d at 1201, 1205. Here, the government did more than show Mr. Ballieu merely used his cellular telephone to prove the required interstate commerce element. Instead, it introduced both (1) the audio recording of Mr. Ballieu admitting he sent the pornographic image to his wife in Wyoming from his cellular telephone while he was physically in Colorado; and (2) Mrs. Ballieu's testimony she was physically in Wyoming when she received the image from her husband's cellular telephone while he was physically in Colorado. Either of these pieces of evidence is

sufficient to establish the pornographic image traveled from a location in Colorado to a location in Wyoming. As a result, evidence as to the closest "cell tower" was unnecessary for the government to carry its burden of proof.

Regarding the issue of whether the jury listened to the fifty-three-minute audio recording, it is clear jury deliberations are secret. *See Yeager v. United States*, 129 S. Ct. 2360, 2368 (2009). Even so, we can "presume jurors attend closely to the language of the instructions in a criminal case and follow the instructions given them." *United States v. Kelly*, 535 F.3d 1229, 1238 n.6 (10th Cir. 2008) (quoting *United States v. Almaraz*, 306 F.3d 1031, 1037 (10th Cir. 2002)), *cert. denied*, 129 S. Ct. 1392 (2009). Here, the district court instructed the jury that the government had the burden of establishing each of the elements of the crime charged by proof beyond a reasonable doubt, including that the image was transported in interstate commerce from Colorado to Wyoming. It also instructed the jury to carefully consider the admitted evidence, including the exhibits. Thus, we presume the jurors followed the court's instructions, and, in finding Mr. Ballieu guilty, it is clear the jury either relied on the fifty-three-minute audio recording of Mr. Ballieu's interview or credited Mrs. Ballieu's testimony, or both. Again, either is sufficient evidence to reach a guilty verdict on the interstate commerce element.

Finally, Mr. Ballieu has not presented any authority, nor are we aware of any, to support his suggestion his motion for acquittal should have been granted merely because the fifty-three-minute audio recording was unpublished to the jury in open court. We find this argument especially disingenuous given Mr. Ballieu stipulated the fifty-three-minute audio recording would not be played in open court but, instead, would be provided to the jury for its deliberations. Even if we somehow discerned an error in its submission to the jury without being played in open court, Mr. Ballieu, through his stipulation, invited the error he now seeks to challenge, resulting in his waiver of the issue on appeal. *See United States v. Zubia-Torres*, 550 F.3d 1202, 1205 (10th Cir. 2008) (stating waiver occurs "where a party has invited the error that it now seeks to challenge, or where a party attempts to reassert an argument that it previously raised and abandoned below"), *cert. denied*, 129 S. Ct. 2034 (2009). Thus, for all of the reasons stated, we conclude the district court did not err in denying Mr. Ballieu's motion for judgment of acquittal.

## IV. Conclusion

Accordingly, we **AFFIRM** Mr. Ballieu's conviction.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge